IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA : 
:
v. : Criminal Case No. DKC 12-0493
:
NORMAN LEE :
:

**MEMORANDUM OPINION**

Norman Lee filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19.  (ECF No. 46).  He is currently serving a 188-month sentence as a result of his conviction for conspiring to distribute and possess with intent to distribute a controlled substance — namely phencyclidine, commonly referred to as "PCP."  Mr. Lee currently is serving his sentence at FCI Gilmer in Glenville, West Virginia and he has served more than 8 years of this sentence. He is projected to be released on September 24, 2024.[1]  For the following reasons, the motion for compassionate release will be granted.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c)(2018).  This general rule is subject to certain exceptions,

---

[1] The motions to seal (ECF Nos. 44; 52) are GRANTED.  The personal medical information should remain private, except as recited herein.

including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id*. § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

>  Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
>  U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
>>  1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>>
>>  (A) Medical Condition of the Defendant.—
>>
>>  (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>>   (ii) The defendant is—
>>
>>  **(I) suffering from a serious physical or medical condition**,
>>
>>  (II) suffering from a serious functional or cognitive impairment, or

3

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of

4

> BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). The Attorney General issued a second memorandum to Carvajal on April 3, 2020, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate...." *Id.*
>
> The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at *3 – 4 (D.Md. June 17, 2020) (footnote omitted).

Mr. Lee argues that he meets the "extraordinary and compelling reasons" because his underlying medical conditions (hypertension, type 2 diabetes, and obesity) make him especially vulnerable to COVID-19. He asserts that he does not pose a danger to the community, and the § 3553(a) factors warrant release.

Mr. Lee pled guilty to conspiracy to distribute more than 100 grams of PCP from June 2010 to January 2012. The others were charged in a separate indictment, RWT 12-86. By all accounts, Mr. Lee was less involved than several who received lengthy sentences in the related case. Mr. Lee, however, qualified as a career offender, a designation he now asserts was erroneous. First, the

5

offense in this case was conspiracy, which no longer qualifies as a controlled substance offense, *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019).  Second, he contends that his prior convictions, attempted distribution of marijuana and attempted possession with intent to distribute, should not qualify because they were not completed offenses.  He also argues that his characteristics, reentry plan, and lack of danger warrant release at this time.  He is 43 years old, and suffered with drug addiction to marijuana since his teenage years.  He has completed RDAP while incarcerated.  His weight, 270 pounds at sentencing, is now up to 305.  In addition to the hypertension he suffered with at the time of sentencing, he now has type 2 diabetes as well.  He has been employed through UNICOR.  He will be eligible for home detention on March 24, 2024.  He plans to live with his sister in Washington, D.C., and has other family in the area.  He intends to seek job training, medical care, and other social services upon release.

The Government opposes release because Mr. Lee has only served just over half of the sentence and because the BOP is taking measures to control the spread and provide treatment for COVID-19.  The Government recites that Judge Titus, in 2013, noted that Mr. Lee had not been deterred by prior convictions, and carefully compared Mr. Lee with the others in the related conspiracy indictment. The Government also questions Mr. Lee's proposed place of residence, an apartment community in a part of Washington with

a high incidence of COVID-19. The Government concedes that Mr. Lee's medical conditions, coupled with the pandemic, mean that he qualifies for consideration. Nevertheless, it contends that he would present a danger to the community in the form of continued drug dealing or other criminal conduct, that he would not be safer from COVID-19 in the community, or that he would not conduct himself so as to keep others safe. Finally, the Government argues that the § 3553(a) factors weigh against release. In addition to the facts noted above, it submits that the BOP may do a better job of providing needed medical and rehabilitative services than he would receive in the community, and that premature release would deprive him of programs and release planning. It asserts that any alleged error in designating him as a career offender is not a basis for compassionate release, which he unsuccessfully challenged in prior proceedings. Beyond that, it argues that *Norman* is not retroactive and the attempt offenses do qualify in the United States Court of Appeals for the Fourth Circuit.

In reply, Mr. Lee asserts that he is not a danger because the goals of punishment and deterrence have already been met for him. He has already obtained his GED and completed educational and vocational courses. He completed RDAP, has been working, and saving money. He has no disciplinary infractions. He still maintains that his guidelines, were he sentenced today for this offense, would be much lower, at 70 to 87 months.

7

The parties properly agree that Mr. Lee's medical conditions, in light of the COVID-19 public health emergency, qualify him for consideration for compassionate release.  While his prior track record is not good, Mr. Lee also reliably asserts that he would not be a danger.  The drug addiction that fueled some of his criminal conduct has been treated, and he will be on supervised release with continued treatment required.  The real question is whether serving just over half of the imposed sentence (although more than that with good time reduction) is sufficient.  His projected release is only 4 years away, meaning that he has served more like three quarters of the sentence.  While he is not entitled to be sentenced in line with today's guidelines, neither should the court ignore the changed landscape when considering the goals of sentencing.  He must understand that the medical conditions that qualify him for consideration place him at increased risk of severe illness should he become infected.  That surely should convince him to abide, scrupulously, to all public health orders and guidelines to protect himself and those around him from exposure.

Accordingly, the motion for compassionate release will be GRANTED.  An amended judgment will be entered, once a release plan is approved.

                                              /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge